# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings<br>Under Chapter 7 |
| JOHN T. SPENCER | |
| | Case No. 20-30649 |
|        Debtor(s). | |
| DONALD M. SAMSON, Trustee<br>for the Estate of John T. Spencer | |
|        Plaintiff(s), | |
| | Adversary No. 22-3016 |
|    v. | |
| JOHN T. SPENCER; MICHAEL SAYERS,<br>Trustee of the James T. Spencer and Mary K.<br>Spencer Irrevocable Insurance Trust Dated<br>March 15, 1995; MELANIE JEAN SPENCER;<br>SANDRA LYNN SPENCER; SHANNON<br>NICOLE SPENCER; STEPHEN JAMES SPENCER<br>ANGELA CHRISTINE SPENCER; JENNIFER ELAINE<br>SPENCER; and AMY CATHERINE SPENCER | |
|        Defendant(s). | |

## **OPINION**

This matter is before the Court on Motions to Dismiss Adversary Complaint filed by

Defendants John T. Spencer ("Debtor") and Angela Christine Spencer, Jennifer Elaine Spencer, and

Amy Catherine Spencer ("Children") (collectively also referred to "Defendants").  The case

presents the issue of whether a Chapter 7 Trustee, using the "strong arm" powers conferred by 11

U.S.C. § 544(b)(1), may avoid a disclaimed inheritance as a fraudulent transfer pursuant to the

Federal Debt Collection Procedures Act ("FDCPA" or "Act").

1

### INTRODUCTION

One of the aims of the Bankruptcy Code is the equitable treatment of creditors. Thus, the Bankruptcy Code confers special powers upon a trustee to avoid or "undo" certain transfers made by a debtor in advance of the filing of the bankruptcy petition.  These transfers may not necessarily have occurred immediately prior to filing and, in some instances, may even have occurred years before the commencement of the bankruptcy.   The trustee's avoiding powers prevent a debtor from interfering with a creditor's right to receive its fair share of the debtor's assets by transferring to others without, for example, receiving reasonably equivalent value in return.  In addition to giving trustees special bankruptcy avoiding powers, the Bankruptcy Code also permits a trustee to "step into the shoes" of an existing unsecured creditor to assert that creditor's rights under "applicable" non-bankruptcy law by recovering the transferred property for the bankruptcy estate through 11 U.S.C. §§ 544(b) and 550.  Once recovered, the property becomes property of the estate pursuant to § 541(a)(3).

In this adversary proceeding, the Trustee seeks to avoid the Debtor's disclaimer of his $375,000.00 share of an inheritance as a fraudulent transfer.  The Trustee asserts that because the Internal Revenue Service ("IRS") –one of the Debtor's unsecured creditors--could have avoided the disclaimer pursuant to § 3304 of the FDCPA, he may, therefore, "step into the shoes" of the IRS to avoid the transfer and recover the proceeds for the benefit of the Debtor's creditors.  The Debtor and the Children, who received the inheritance proceeds upon the Debtor's disclaimer, are resisting the Trustee's efforts.

In this opinion, the Court examines Motions to Dismiss filed by the Defendants and the Trustee's objections thereto.  The motions challenge the applicability of the FDCPA as well as the

Trustee's contention that the disclaimer constituted a "transfer" of an "interest of the Debtor in property."

**FACTS**

The undisputed facts are as follows.  On March 5, 1995, the Debtor's parents, James T. Spencer and Mary K. Spencer ("Grantors"), established an irrevocable insurance trust for the benefit of certain of their descendants ("Trust").  Article V of the Trust stated that after the death of the last Grantor, the Trust residue would be divided equally among four of the Grantors' children: Patricia Spencer, Kathleen Duffy, Jean Spencer, and the Debtor.  The last living Grantor, James T. Spencer, died on January 21, 2019.  Defendant Michael Sayers ("Sayers"), in his capacity as trustee of the Trust, initially held $1,500,000.00 of life insurance proceeds.   He distributed $375,000.00 of those funds to Patricia Spencer, Kathleen Duffy and Jean Spencer each, representing their full distribution of the Trust estate.

On May 9, 2019, the Debtor disclaimed his interest in the Trust ("Disclaimer"). Consequently, pursuant to the terms of the Trust, the Debtor's share of $375,000.00 was to be distributed to his lineal descendants.  The Debtor's lineal descendants are his seven (7) adult children, all of whom are named as defendants to this action.  Sayers distributed $53,571.93 to four of the children, specifically Stephen James Spencer, Angela Christine Spencer, Jennifer Elaine Spencer and Amy Catherine Spencer.  The remaining balance of the Debtor's share, $160,714.29, is currently being held by Sayers.

On July 2, 2020, the Debtor filed for protection under Chapter 7.  Debtor's Schedule D listed the Internal Revenue Service ("IRS"), an agency of the United States, as a partially secured creditor in the estimated amount of $150,000.00.  According to the complaint, between February 7, 2011 and December 12, 2012, the IRS filed liens against the Debtor for assessment dates from April 15,

3

2006 through November 19, 2012 in the aggregate total amount of $142,982.06.  This obligation

remains unpaid.  The IRS is also listed as an unsecured creditor on the Debtor's Schedule E/F as

holding an unsecured priority claim in the amount of $6,363.00 (Debtor's Schedule E/F, ¶ 2.2, Doc.

24).[1]

On June 30, 2022, Donald Samson, Trustee of the Debtor's bankruptcy estate, filed the

instant Complaint to Avoid Fraudulent Transfer and to Recover Property of the Estate. Counts I and

II of the complaint seek to avoid the Disclaimer as a fraudulent transfer pursuant to 11 U.S.C. §

544(b) and 28 U.S.C. §§ 3304(a)(1) and 3304(b)(1)(A) respectively.  Counts III through VI seek

recovery of the funds distributed to Stephen, Angela, Jennifer, and Amy Spencer by virtue of the

Disclaimer pursuant to 11 U.S.C. § 550.  Finally, Count VII requests that Sayers provide an

accounting and turnover all Trust proceeds in his possession to the Trustee. It also requests that the

Court avoid the Debtor's interest in the Trust proceeds as to Melanie Spencer, Sandra Spencer and

Shannon Spencer pursuant to 11 U.S.C. §§ 544 and 550.

## **LEGAL STANDARD**

The Defendants seek dismissal of the Trustee's complaint on the grounds that it fails to state

a cause of action upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

As such, for purposes of these motions, the Court must accept the plaintiff Trustee's well-pleaded

factual allegations as true and draw all permissible inferences in the plaintiff's favor. *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544,127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Fortes Grand Corp. v.*

*Warner Bros. Entm't Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).  Although a "plaintiff need not plead

'detailed factual allegations' to survive a motion to dismiss, she must provide more than mere

'labels and conclusions or a formulaic recitation of the elements of a cause of action' for [the]

---

[1] There is no dispute between the parties that the IRS holds an unsecured claim.

complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chicago*, 835 F.3d 736,738 (7th Cir. 2016) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

The purpose of a motion to dismiss is to "test a claim's legal sufficiency." *Beach v. Bank of America (In re Beach)*, 447 B.R. 313, 318 (Bankr. D. Idaho 2011) (*citing Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "[Under Civil Rule 12(b)(6)], the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 184, 125 S.Ct. 1497, 1510, 161 L.Ed.2d 361 (2005).

## DISCUSSION

The Federal Debt Collection Procedures Act ("FDCPA) provides the "exclusive civil procedures for the United States" to recover a debt. 28 U.S.C. § 3001(a)(1). It establishes a "comprehensive statutory framework for the collection of debts owed to the United States government." *United States v. Gelb*, 783 F. Supp. 748, 752(E.D.N.Y. 1991) (*quoting* H.R. Rep. No. 101-736, 101st Cong. 2d Sess., *reprinted in* 1990 U.S. CODE CONG. & ADMIN. NEWS 6630, 6631). The "United States" is defined in the Act as including "an agency, department, commission, board or other entity of the United States" 28 U.S.C. § 3002(15)(B), such as the IRS. The definition of the term "debt" under the Act includes an extensive list of obligations, including "an amount that is owing to the United States on account of a … tax … or other source of indebtedness to the United States." 28 U.S.C.§ 3002(3)(B).

As part of its collection mechanism, the FDCPA includes provisions for the avoidance of fraudulent transfers. 28 U.S.C. §§3301-3308. In his complaint, the Trustee asserts two alternative bases for avoiding the Disclaimer as a fraudulent transfer under the FDCPA: one for constructive

fraud pursuant to § 3304(a)(1) and the other for actual fraud under § 3304(b)(1)(A). While the fraudulent transfer provisions of the FDCPA are similar to state fraudulent transfer statutes under the Uniform Fraudulent Transfer Act, there is at least one marked difference; the FDPCA affords a six-year statute of limitations rather than the four-year period generally afforded under state fraudulent transfer provisions. 28 U.S.C. § 3306(b)(2). *See also In re CVAH, Inc.*, 570 B.R. 816, 828 (Bankr. D. Idaho 2017).

In his complaint, the Trustee contends that as the trustee, § 544(b) of the Bankruptcy Code permits him to step into the shoes of the IRS and utilize the FDCPA to avoid the transfer of the disclaimed Trust proceeds as a fraudulent transfer. Section 544(b)(1) provides that

> [t]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1). The avoiding power under § 544(b) is derivative; it permits a trustee to "step into the shoes" of an actual unsecured creditor to recover transfers that the creditor would otherwise have been able to recover but for the filing of the bankruptcy petition.[2] *In re Equipment Acquisition Resources, Inc.*, 742 F.3d 743, 746 (7th Cir. 2014); *In re CVAH*, 570 B.R. at 823

---

[2] In its discussion of § 544(b), COLLIER ON BANKRUPTCY stated:

> It is well established that the effect of this section is to clothe the trustee with no new or additional rights in the premises over that possessed by a creditor, but simply puts him in the shoes of the latter, and subject to the same limitations and disabilities that would have beset the creditor in the prosecution of the action on his own behalf; and the rights of the parties are to be determined, not by any provision of the [former] Bankruptcy Act, but by the applicable principles of common law, or the laws of the state in which the right of action may arise. In other words, the [former]Bankruptcy Act merely permits the trustee the rights which the creditor could assert but for the pendency of the bankruptcy [case], and if, for any reason arising under the laws of the state the action could not be maintained by the creditor, the same disability will bar the trustee.

5 COLLIER ON BANKRUPTCY ¶ 544.06 (10th ed.) (*quoting Davis v. Willey*, 263 F. 588, 589 (N.D. Cal. 1920), *aff'd*, 273 F. 397 (9th Cir. 1921)).

The Trustee argues that because the IRS--an agency of the United States--is an unsecured creditor in this case, he may step into the shoes of the IRS to employ § 3304(a) of the FDCPA as applicable law under § 544(b) to avoid the Debtor's disclaimer of his interest in the Trust as a fraudulent transfer.

For their part, the Defendants maintain that the Trustee has failed to state a cause of action and, therefore, the complaint must be dismissed.  First, the Defendants maintain that the FDCPA is inapplicable to avoidance actions brought by a bankruptcy trustee under § 544(b)(1) of the Bankruptcy Code, or, alternatively, as applied to the facts in this case.  They also maintain that because the Debtor disclaimed his interest in the Trust proceeds under Illinois law, he never possessed an interest in "property" or an "asset" that could be transferred under the FDCPA.  Both of these arguments center on what is the appropriate definition of "property" for purposes of § 544(b)(1) and the FDCPA.

## APPLICABILITY OF THE FDCPA TO BANKRUPTCY TRUSTEE AVOIDANCE ACTIONS AND TRUSTEE STANDING UNDER § 544(b)(1)

There is a split of authority as to whether the FDCPA constitutes "applicable law" for purposes of §544(b) and there is no binding precedent on this point in the Seventh Circuit. The overwhelming majority of courts addressing the issue, however, have concluded that the FDCPA is "applicable law" for purposes of § 544(b).  *See e.g.  In re Webster*, 629 B.R. 654, 680 (Bankr. N.D. Ga. 2021); *In re Gaither,* 595 B.R. 201 (Bankr. D.S.C. 2018); *In re CVAH,* 570 B.R. at 823; *In re Alpha Protective Services, Inc.,* 531 B.R. 889 (Bankr. M.D. Ga. 2015); *In re Tronox*, 503 B.R. 239 (Bankr. S.D.N.Y 2013).  In reaching their conclusion, the majority courts have focused on the language of § 544(b) along with the interpretation of similar statutes and perceived purpose behind § 544(b).

7

Unfortunately, the Bankruptcy Code does not include a definition of the term "applicable law." As a result, it is left to the courts to discern what this phrase means. The starting point for any exercise in statutory interpretation is the language of the statute itself. "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030, 157 L.Ed.2d 1024 (2004). Further, absent a contrary definition within the Code, a statute's words are presumed to have their ordinary meaning. *Ransom v. FIA Card Serv., N.A.*, 562 U.S. 61, 69, 131 S.Ct. 716, 724, 178 L.Ed.2d 603 (2011) (*citing Hamilton v. Lanning*, 560 U.S. 505, 513, 130 S.Ct. 2464, 2471, 177 L.Ed.2d 23 (2010)).

On its face, the language of §544(b)(1) is quite broad. Rather than restricting the trustee to avoidance actions under "state law" or to specified code sections, § 544(b)(1) uses the term "applicable law." The only limiting factor imposed by § 544(b)(1) is that the "triggering creditor" into whose shoes the Trustee steps must have the ability to avoid the transfer under the law in question. *In re CVAH, Inc.,* 570 B.R. at 825. *See also Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 711 (Bankr. N.D. Ill. 2014). As the CVAH court explained, "the focus of the § 544(b)(1) inquiry is not on whether a bankruptcy trustee may prosecute an avoidance action, it is whether the creditor into whose shoes the trustee has stepped may pursue avoidance. *CVAH* at 831. Section 544(b) also does not restrict which of the debtor's creditors the trustee chooses as the "triggering creditor" to avoid the transfer, so long as such creditor holds a claim that is allowable under § 502, or not allowable only under § 502(e). *Vieira v. Gaither (In re Gaither)*, 595 B.R. 201, 214 (Bankr. D.S.C. 2018); *CVAH* at 825; *Gordon v. Harrison (In re Alpha Protective Servs, Inc.)*, 531 B.R. 889, 906 (Bankr. M.D. Ga. 2015).

8

Further, the courts advocating a broad interpretation of "applicable law" to include the FDCPA have reasoned that this approach is consistent with the purpose of § 544(b)(1). As the court explained in *In re CVAH*:

> The purpose of § 544(b)(1), applied in conjunction with the recovery provisions of § 550, is to restore the bankruptcy estate to the financial condition it would have enjoyed if the fraudulent transfer had not occurred. Indeed, the primary goal of these statutes is creditor equity and estate restoration, *i.e.*, putting the estate back where it would have been but for the transfer. Allowing a trustee to utilize all available 'applicable law' furthers the trustee's ability to accomplish this purpose.

*In re CVAH,* 570 B.R. at 825 (internal citations omitted).

Finally, the majority courts have looked to analogous statutory provisions to support their analysis. Although the Supreme Court has never addressed the definition of "applicable law" under § 544(b)(1), it has examined the similar phrase, "applicable nonbankruptcy law," found elsewhere in the Bankruptcy Code and concluded that it should be broadly applied. In *Patterson v. Shumate*, 504 U.S. 753, 758, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Court analyzed § 541(c)(2) of the Bankruptcy Code to determine whether an anti-alienation clause in an ERISA qualified pension plan "constitute[d] a restriction on transfer enforceable under 'applicable nonbankruptcy law.'" *Id.* at 755, 112 S.Ct. at 2244. In its analysis, the Court noted that Congress, when it wished to do so, knew how to restrict the application of a statute to "state law." *Id.* at 758, 112 S.Ct. at 2246. The fact that it employed the broader phrase "applicable nonbankruptcy law" in § 541(c)(2) led the Court to conclude that the statute was not restricted to state law but, rather, "encompass[ed] any relevant nonbankruptcy law, including federal law," *Id.* at 759, 112 S.Ct. at 2247. The majority courts cite the reasoning in *Patterson* to support their conclusion that "applicable law" under § 544(b) is not limited solely to state law. *In re Gaither*, 595 B.R. at 214; *CVAH*, 570 B.R. at 825-26. *See also*, *In re Grobner*, 2019 WL 2031060 at *3 (Bankr. C.D. Ill., May 8, 2019). Although "applicable nonbankruptcy law" is not identical to "applicable law," the only difference is that

9

"applicable nonbankruptcy law" describes a more limited set of laws (i.e. "nonbankruptcy" law), while the latter contains no such limitation.  Therefore, the Court concludes here, as the Supreme Court did in *Patterson*, that had Congress intended to restrict the reach of "applicable law" under § 544(b)(1), it would have expressly done so.

While most courts permit application of the FDCPA in bankruptcy proceedings, this position is not universal. The Court is aware of a small number of cases where courts have taken a contrary position based on limitations imposed in the FDCPA itself regarding its application in the bankruptcy context.   Section 3003(c)(1) of the FDCPA states that the Act "shall not be construed to supersede or modify the operation of title 11." 28 U.S.C. § 3003(c)(1).  At least two courts—the Fifth Circuit Court of Appeals and the United States District Court for the Northern District of Georgia—have held that § 3304 of the FDCPA may *not* be invoked as "applicable law" under § 544(b), as to do so would constitute an impermissible "modification" of the Bankruptcy Code.  *In re Mirant Corp.*, 675 F.3d 530 (5th Cir. 2012); *MC Asset Recovery, LLC v. The Southern Co.*, 2008 WL 8832805 (N.D. Ga., July 7, 2008).

In *Mirant*, the plaintiff sought to implement the FDCPA via § 544(b) to avoid a guaranty and to recover the funds paid for the benefit of the estate.  Rather than prohibiting the FDCPA's application to bankruptcy proceedings, the plaintiff argued that § 3003(c) "simply [meant] that the FDCPA should be treated like any other 'applicable law' available to the trustee in bankruptcy." *Mirant*, 675 F.3d at 535.  Conversely, the defendant lenders argued that permitting the plaintiff to utilize the FDCPA as applicable law would necessarily "modify" Title 11.  *Id.*

After extremely limited statutory analysis, the *Mirant* court declared that the statutory text of § 3003(c) prohibited the application of the FDCPA to actions under § 544(b).  *Id.* In reaching this conclusion, the court relied almost entirely on its prior decision in *In re Volpe*, 943 F.2d 1451 (5th

Cir. 1991), in which it analyzed the terms "modify" and "impair" in the context of an ERISA provision that stated it could not be construed to modify or impair any law of the United States or any rule or regulation promulgated thereunder. *Id*. at 1452.  The *Volpe* court ultimately concluded that ERISA could not preempt a state exemption statute that had been enacted pursuant to § 522(b)(2) of the Bankruptcy Code because doing so would impermissibly modify the enforcement of the Bankruptcy Code.  The *Mirant* court, after briefly summarizing its *Volpe* opinion (and offering little additional analysis), concluded that permitting a bankruptcy trustee to utilize the FDCPA as "applicable law" under § 544(b)(1) would similarly "modify" the operation of title 11. *Mirant*, 675 F.3d at 535.

The *Mirant* court bolstered this conclusion by an examination of the legislative history of the FDCPA.  Although acknowledging that the legislative history was "not dispositive," the court cited the comments of Committee Chairman Jack Brooks in which he stated that the FDCPA was "carefully worded to make clear that the act would have absolutely no effect on the Bankruptcy Code" and that "even provisions of the Bankruptcy Code making reference to nonbankruptcy law [were] to be read as if [the FDCPA] did not exist."  *Id.* at 535-36, *quoting* 136 Cong. Rec. H13288-02 (daily ed. Oct. 27, 1990) (statement of Rep. Jack Brooks).  *See also MC Asset Recovery*, 2008 WL 8832805 at *4 (the FDCPA's legislative history was consistent with its purpose of creating a uniform framework by which the federal government could collect its debts and that extending the FDCPA to any case in which the United States was an unsecured claimant expanded § 544(b) beyond its "intended reach.").

The majority courts, while acknowledging *Mirant*, have rejected both its interpretation of the phrase "supersede or modify" under 28 U.S.C. § 3003(c) as well as its reliance on the FDCPA's legislative history.  As the court explained in *In re CVAH, Inc.*:

> Section 544(b)(1) is an enabling statute; its role in the Code is not to identify the specific laws a bankruptcy trustee may use to avoid a transfer.  Rather, its purpose is to allow trustees to generally invoke applicable laws, *i.e.,* all statutes that an unsecured creditor with an allowed claim in the case could utilize outside of bankruptcy.

> Once an 'applicable law' is identified in the context of a specific case, the operation of § 544(b) is complete.  The Code does not attempt to prescribe how that 'applicable law' is to be applied; and nothing in § 544(b)(1)'s language suggests that a specific result need be obtained by application of one 'applicable law' over another.

*In re CVAH, Inc.*, 570 B.R. at 829.  *See also In re Kaiser*, 525 B.R. 697, 713, n. 11 (Bankr. N.D. Ill. 2014) ("Section 544 is simply an enabling formula," and although the variable input will always change the result, "that is not a modification of either section 544's operation or of the operation of Title 11 as a whole.").

Further, the court's holding in *Mirant* was based on what it believed to be the unambiguous language of 28 U.S.C. § 3003(c).  However, it is a well-established canon of statutory construction that if the language of a statute is clear, no additional analysis is necessary.  As the Supreme Court has explained, "[w]hen the words of a statute are unambiguous, then . . . judicial inquiry is complete."  *Connecticut. Nat'l Bank v. Germain*, 503 U.S. 249, 254, 112 S.Ct.. 1146, 1149, 117 L.Ed.2d 391 (1992).  Hence, absent an ambiguity in the statute, there was no need for an examination of its legislative history.  As Judge Gorman explained in *In re Grobner*:

> The meanings of 'supersede' and 'modify' [in § 3003(c)] are plain and not ambiguous. Use of the FDCPA as 'applicable law' under § 544(b) neither supersedes nor modifies any provision of the [Bankruptcy] Code.  To the contrary, use of the FDCPA can be harmonized with the Code because use of both state and federal law to supplement a trustee's recovery options is expressly contemplated by the Code.  Relying on legislative history to contradict the plain meaning of the statute assigns the legislative history too much weight.

*Grobner,* 2019 WL 2031060 at *4.

Even if the use of the FDCPA's legislative history was appropriate, its persuasive value is limited. As indicated *infra*, the *Mirant* court relied exclusively on the floor comments of House Committee Chairman Jack Brooks to support its conclusion that the FDCPA was not "applicable law" under § 544(b)(1). It is well established that "[a] court must be cautious in relying on a single comment made by an individual congressman in the process of enacting legislation in Congress." *CVAH, Inc.*, 570 B.R. at 830 (*citing N.L.R.B. v. S.W. General, Inc.*, 580 U.S. 288, 307, 137 S.Ct. 929, 943, 197 L.Ed. 2d 262 (2017) ("floor statements by individual legislators rank among the least illuminating forms of legislative history"); *Garcia v. United States*, 469 U.S. 70, 76, 105 S.Ct. 479, 83 L.Ed. 2d 472 (1984) ("We have eschewed reliance on the passing comments of one Member [of Congress] …."); *Weinberger v. Rossi*, 456 U.S. 25, 35, 102 S.Ct. 1510, L.Ed. 2d 715, n. 15 ("The contemporaneous remarks of a sponsor of legislation are certainly not controlling in analyzing legislative history.").

Based on the foregoing, the Court respectfully rejects the *Mirant* court's conclusion that 28 U.S.C.§ 3003(c) mandates an absolute prohibition against the use of the FDCPA in bankruptcy proceedings. The Court notes that in nearly every case where the courts have declined to follow *Mirant,* the Trustee was invoking the FDCPA in order to take advantage of its longer statute of limitations. *See e.g.,* C*VAH,* 570 B.R. at 830; *Kaiser,* 525 B.R. at 697; *Tronox*, 503 B.R. at 329. As the court in *CVAH* observed, "whether the look-back period for avoidance of a fraudulent transfer is six years under the FDCPA, rather than four or two-years under other laws, in no way impacts or changes the operation of § 544(b)(1), or any other provision of Title 11…." *CVAH* at 829. *See also Kaiser* at 713 (although rejecting *Mirant* as to statute of limitations issues, the court acknowledged that the reasoning in that case was based, in part "on the working of the FDCPA."). The application of the FDCPA in this case, as in *Mirant*, is more substantive in nature. Focusing on this distinction,

13

the Children assert that permitting the Trustee to implement the FDCPA to avoid the Disclaimer in this case would, in fact, impermissibly "modify the operation of title 11."

In support of this contention, the Children make a multi-tier argument. They first note that "a trustee's avoidance powers under Section 544(b), as well as his ability to recover under Section 550, are dependent on a finding that the property he or she would otherwise recover would have been property of the estate but for the transfer." *Supplemental Memorandum of Law in Support of Motion to Dismiss of Angela Christine Spencer, Jennifer Elaine Spencer and Amy Catherine Spencer (Children's Supplemental Memorandum)*, ECF Doc. 41, p. 7, *citing Begier v. IRS*, 496 U.S. 53, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Property of the estate for purposes of § 541(a)(1) of the Bankruptcy Code is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The Children contend that because a disclaimant is deemed to have never held an interest in the disclaimed property under Illinois law, the property at issue in this case never became property of the Debtor's bankruptcy estate-- *i.e.,* it is "non-estate property." They argue that if the Trustee is permitted to proceed under § 3304 of the FDCPA to avoid the Disclaimer, he would essentially be avoiding the transfer of "non-estate property" and, therefore, fundamentally modifying the operation of the Bankruptcy Code. *Children's Supplemental Memorandum* at 11-12.

Property of the estate under § 541(a)(3) also includes "any interest in property that the trustee recovers under section . . . 550" of the Bankruptcy Code. Therefore, the property of the estate may be increased by property the trustee recovers. Certainly, a debtor must have had an interest in property prior to filing for it to be subject to an avoidance action by the Trustee, i.e., in this case, the right to receive the Trust distribution. However, the Children's argument presupposes that Illinois law is determinative as to the Debtor's interest in the disclaimed property. Thus,

14

ascertaining the appropriate definition of "property" is integral in determining not only whether the

Trustee's FDCPA avoidance action impermissibly "modifies the operation of title 11," but also, if

there is no such modification, whether there has been a "transfer" of "property" for purposes of 26

U.S.C. § 3304.[3]

## WHETHER THE DEBTOR'S DISCLAIMER CONSTITUTES A TRANSFER OF "PROPERTY"

To fully analyze the Children's arguments, it is necessary to look at several things in

tandem: the language of 11 U.S.C. § 544(b)(1), the definitions of "property" and "transfer" under

the FDCPA, and the treatment of disclaimed property under the Illinois Probate Act.

The Trustee has brought this complaint pursuant to § 3304 of the FDCPA.  It provides, in

pertinent part:

> **(a) Debt arising before transfer**. —Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt to the United States which arises before the transfer is made or the obligation is incurred if—
> **(1)(A)** the debtor makes the transfer or incurs the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
> **(B)** the debtor is insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation ….
>
> * * *
>
> **(b)  Transfers without regard to date of judgment—** (1) Except as provided in section 3307, a transfer made or obligation incurred by a debtor is fraudulent as to a debt of the United States, whether such debt arises before or after the transfer is made or the obligation is incurred, if the debtor makes the transfer or incurs the obligation—
> **(A)** with the actual intent to hinder, delay or defraud a creditor ….

28 U.S.C. §§ 3304(a), (b)(1)(A).  Pursuant to 28 U.S.C. § 3305, "[a] transfer is not made until the

debtor has acquired rights in the asset transferred."  Hence, to successfully prosecute a fraudulent

transfer claim under the FDCPA, the Trustee must prove (1) the existence of a debt that predates the

---

[3] Because the Children's "applicability" argument goes to the substance of the Trustee's complaint, it is necessary to analyze the two issues together.

transfer, (2) a transfer of an asset, (3) lack of equivalent value in exchange for the transfer, and (4) the debtor's insolvency at the time of the transfer. *U.S. Small Business Admin. v. Bensal,* 853 F.3d 992, 997 (9th Cir. 2017). Of these requirements, the only one that is in dispute for purposes of the Defendants' Motions to Dismiss is whether the Debtor's Disclaimer constitutes a "transfer" of an "asset."

Pursuant to § 5/2-7(a) of the Illinois Probate Act of 1975, a person has a right to disclaim any interest in property or interest in property that passes to them.[4]  Under Illinois law, upon execution of the disclaimer, the property in question passes as if the disclaimant had predeceased the decedent and the disclaimer relates back to the date of the decedents death "for all purposes." 755 ILCS 5/2-7(d) (referred to herein as the "relation-back" provision).[5]

The Seventh Circuit Court of Appeals addressed the issue of whether a disclaimer is an avoidable interest in property under Illinois law in *Jones v. Atchison (In re Atchison)*, 925 F.3d 209 (7th Cir, 1991).  In that case, the debtor filed a Chapter 7 petition less than three months after she disclaimed an inheritance under her father's will, causing the property in question to pass to the debtor's children.  The Chapter 7 trustee brought an action pursuant to § 548(a) of the Bankruptcy Code to avoid the debtor's disclaimer as a fraudulent transfer.  In rejecting the trustee's position, the court reasoned that the "relation back" provision of the Illinois statute eliminated any interest that

---

[4] Section 5/2-7(a) states:

> **(a) Right to Disclaim Interest in Property.**  A person to whom any property or interest therein passes by whatever means, may disclaim the property or interest in whole or in part by delivering or filing a written disclaimer as hereinafter provided.  755 ILS 5/2-7(a).

[5] Section 5/2-7(d) provides, in pertinent part:

> **(d) Effect of Disclaimer.** Unless expressly provided otherwise in an instrument transferring the property or creating the interest disclaimed, the property, part or interest disclaimed, shall descend or be distributed … (a) in the case of a transfer by reason of the death of any person, as if the disclaimant had predeceased the decedent....; and . . .the disclaimer shall relate back to such date for all purposes. 755 ILCS 5/2-7(d).

the debtor held at the time of the disclaimer, and, therefore, there could be no transfer.  *Id.* at 211-12.

Because the Bankruptcy Code does not define what constitutes an interest in property, the *Atchison* court analyzed the Trustee's § 548(a) claim under Illinois law.  However, the application of state law to determine property interests is not absolute.  As the *Atchison* court specifically noted, a debtor's interest in property is determined by applicable state law "***absent a federal provision to the contrary.***"  *Id.* at 210 (emphasis added) (citations omitted).  *See also Barnhill v. Johnson,* 503 U.S. 393, 398, 112 S.Ct. 1386, 1389, 118 L.Ed.2d 39 (1992) ("In the absence of any controlling federal law, 'property' and 'interests in property' are creatures of state law.");  *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979) (property interests in bankruptcy proceedings are to be determined by state law "unless some federal interest requires a different result").

This "federal law" exception is mandated by the Supremacy Clause of Article VI of the United States Constitution.  Under the Supremacy Clause, "state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." *Wisconsin Pub. Intervenor v. Mortimer*, 501 U.S. 597, 604, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991) (*quoting Gibbons v. Ogden*, 9 Wheat. 1, 22 U.S. 1, 6 L.Ed. 23 (1824); *Aux Sable Liquid Products v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008).  In addition, the FDCPA contains an express preemption clause[6] which specifically preempts state law "to the extent such law is inconsistent with a provision of [the FDCPA]." 28 U.S.C. § 3001(a).

---

[6] Express preemption under the Supremacy Clause occurs "when a federal statute explicitly states that it overrides state or local law."  *Hoagland v. Town of Clear Lake,* 415 F.3d 693, 696 (7th Cir. 2005).

The FDCPA defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of *disposing of* or parting with an *asset* or an *interest in an asset* …. 28 U.S.C. § 3301(6) (emphasis added).  With several exceptions not applicable here, an "asset" means "*property* of a debtor." 28 U.S.C. § 3301(2) (emphasis added).  "Property" is defined quite broadly and includes

> *any present or future interest*, whether legal or equitable, in real, personal (including choses in action), or mixed property, tangible or intangible, vested or contingent, wherever located and however held (*including* community property and *property held in trust* (including spendthrift and pension trusts)) ….

28 U.S.C. § 3002(12) (emphasis added).[7]

A "plain language" reading of the FDCPA outside the prism of state law indicates that the "relation-back" provision of the Illinois Probate Code is inconsistent with the federal statute. The definition of "property" under the FDCPA is expansive and clearly intended to reach *"any"* interest in property that the debtor might have.  While Congress could have limited its definition of "property" under the FDCPA to "property as defined by state law," it did not.  It is undisputed that at the time of the Grantor's death, the Debtor was a beneficiary under the Trust and acquired a vested right under Illinois law to receive distribution of his 25% trust share.[8]  In FDCPA parlance, the Debtor held a "present interest" or "future interest" in "property held in trust."  He then "disposed of" or "parted with" this interest by executing the Disclaimer which funneled his share in the Trust to his children.  The Illinois "relation back" provision which essentially extinguishes this interest—and any subsequent transfer thereof-- is directly in conflict with the FDCPA. As such, due to the express preemption clause in the FDCPA, the state law must yield to the federal statute.

---

[7] At hearing, counsel for the Children argued that because Congress used different terms, "asset" must mean something different than "property."  Counsel did not elaborate, however, on what this "different" meaning was.  Because the statute specifically defines "asset" as "property of the debtor" and appears to use the terms interchangeably, *see i.e.,* § 3304(b)(2), the Court will not make a distinction between the two terms.

[8] The Court notes that for almost four months after the death of the last Grantor, the funds were not disclaimed.

Because the Debtor had a present or future interest in the inheritance, it became property recoverable under 11 U.S.C. § 541(a)(1).   Permitting the Trustee to recover it as a fraudulent transfer by employing § 3304, therefore, in no way "supersedes or modifies the operation of title 11" and this action is not prohibited by § 3003(c) of the FDCPA.  In reaching this conclusion, the Court rejects the Defendants' contention that § 544(b)(1) of the Bankruptcy Code requires that "property" be defined by state law. Section 544(b)(1) permits a trustee to avoid a debtor's interest in "property" that is voidable "under applicable law" by an unsecured creditor.  Because § 544(b)(1) is contained within the Bankruptcy Code, Defendants maintain that the word "property" must, therefore, be interpreted as it would in bankruptcy, *i.e.*by reference to state law.  The court believes, however, that this is a misreading of § 544(b)(1).

As discussed above, although § 544(b)(1) is codified in title 11, it is derivative of law *external* to the Bankruptcy Code and "enables the trustee to do in a bankruptcy proceeding what a creditor would have been able to do outside of bankruptcy—except the trustee will recover the property for the benefit of the estate."  *In re Equipment Acquisition Resources*, 742 F.3d at 744.  As the IRS would obviously not be constrained by state law property considerations when acting under the FDCPA, neither then is a trustee when proceeding under § 544(b)(1).

Further, not only would the Defendants' interpretation of "property" frustrate the purpose of § 544(b)(1), but it would also undermine the effectiveness and purpose of the FDCPA.  The FDCPA "provides the exclusive procedures for the United States" to enforce a judgment or obtain a prejudgment remedy in connection with a claim.  28 U.S.C. § 3001(a).  It was enacted "to provide a more consistent means of debt collection for the United States" and to "'bring an end to the … situation whereby a crazy patchwork of laws in the fifty states dictate[d] debt collection remedies available to [the government] in collecting Federal debts.'"  *Pierce v. U.S.,* 232 B.R. 333, 335

(E.D.N.C. 1999) (*quoting* H.R. Rep. 101-825, p.12 (1990)).  It would be nonsensical to limit the Trustee's avoidance powers under the FDCPA to property as defined by state law when the whole *purpose* of the FDCPA was to eliminate such a result.[9]

Not only is the Trustee's position consistent with the express language of the FDCPA, but it is supported by relevant case authority as well.  In *United States Small Business Administration v. Bensal*, 835 F.3d 992 (9th Cir. 2017), the Ninth Circuit refused to honor a disclaimer under California law on the grounds that it was preempted by the FDCPA.  Admittedly, *Bensal* did not arise in the context of a bankruptcy § 544(b)(1) action.  However, because the trustee "steps into the shoes" of the triggering creditor for purposes of § 544(b)(1), the fact that *Bensal* is not a "bankruptcy case" is of no consequence. The Court finds that it otherwise factually on point and that its reasoning is strongly persuasive.

In *Bensal*, the defendant's business obtained a loan from a private lender which was guaranteed by the United State Small Business Administration ("SBA").  *Id.* at 994. When the business defaulted on the loan, the private lender sued both the business and the defendant, who had personally guaranteed the loan.  *Id.* at 995. The lender ultimately obtained a default judgment on its action which it then assigned to the SBA. *Id.*

Several years later, the defendant inherited a 40% share in his deceased father's trust. *Id.* at 995-96. Rather than accepting his inheritance, the defendant executed a valid disclaimer under California law which, like Illinois law, had the legal effect of passing defendant's trust share to his children and shielding it from the defendant's creditors. *Id.*

---

[9] The purpose of § 544(b)(1) and, by extension, § 3304 of the FDCPA, is not "collection" per se but, rather, avoidance of fraudulent transfers.  However, § 3304 is codified as part of a collection statute and serves a closely related purpose—the recovery of assets that would have otherwise been available for the payment of a federal debt.

After the defendant executed the disclaimer, the SBA filed suit in the federal district court to avoid the disclaimer as a fraudulent transfer under the FDCPA. After examining the language and purpose of the FDCPA, the district court determined that the defendant "ha[d] a property interest in the trust share notwithstanding his disclaimer," and that "he transferred an interest in property in violation of 28 U.S.C.A. § 3304(a)."[10]  *United States Small Business Administration v. Bensal*, 2014 WL 5527821 at *7 (N.D. Cal., Oct. 31, 2014).

In affirming the lower court on appeal, the Ninth Circuit, too, focused on the definitions of "transfer," "asset," and "property" under the FDCPA as well as on the effect of the express preemption clause.  Like the district court, the Ninth Circuit concluded that the California probate statute conflicted with the fraudulent transfer provision of the FDCPA.  It stated:

> Based on the plain language of the FDCPA, Bensal's disclaimer of the trust property qualifies as a transfer of property because Bensal 'disposed of' a 'present or future interest' in his 40% share of 'property held in trust' by executing a disclaimer that channeled the trust share to his children.
>
> Under the FDCPA, Bensal's disclaimer is a transfer of property that can be voided, 28 U.S.C. § 3304(a), but under the California Probate Code '[a] disclaimer is not a voidable transfer.' It seems quite clear that California law is inconsistent with the FDCPA and must give way to the federal statute in light of the express preemption clause.

*Bensal*, 853 F.3d at 997-98 (internal citations omitted).

While the *Bensal* court based its holding primarily on the FDCPA's preemption clause and the conflict between the California Probate Code and the FDCPA, its opinion included a lengthy discussion of the Supreme Court's decision in *Drye v. United States*, 528 U.S. 49, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999).  In *Drye*, the petitioner, who owed substantial federal tax obligations, inherited his mother's estate.  *Id.* at 52, 120 S.Ct. at 478.  At the time of the inheritance, the

---

[10] In reaching its conclusion that the disclaimer constituted a "transfer" under the FDCPA, the court stated: "Because Bensal's trust share is 'property' and thus an 'asset,' a disclaimer clearly falls within this broad definition of 'transfer' in 28 U.S.C. § 3301(6). *Id.* at n. 10.

petitioner was insolvent, and the IRS had valid tax liens against all of his "property and rights to property" pursuant to 26 U.S.C. § 6321.[11]  *Id.* at 53, 120 S.Ct. at 479.  The petitioner subsequently disclaimed his interest in the estate under Arkansas law which, like the Illinois statute at bar, contained a "relation-back" provision.

 In concluding that the petitioner's state court disclaimer could not defeat the federal tax liens, the *Drye* Court noted that Arkansas had given the petitioner "a right of considerable value— the right either to inherit or channel the inheritance to a close family member …." *Id.* at 60, 120 S.Ct. at 483.  Focusing on the "breadth of control" that the petitioner could exert over the property, the Court concluded that the petitioner did have "property" or "rights to property" to which federal tax liens could attach under § 6321 of the Internal Revenue Code.  *Id.* at 61, 120 S.Ct. 483.

 Based on its factual similarity, the *Bensal* court concluded that *Drye* "mandate[d]" a finding that the petitioner held an interest in "property" under the FDCPA. *Bensal*, 853 F.3d at 1000.  However, it is important to note that in *Drye*, the Court was interpreting the terms "property" and "rights to property" as they were used in § 6321 of the Internal Revenue Code.  As the Ninth Circuit itself has noted, the Court's language in *Drye* "repeatedly stressed" that it is "first and foremost a tax lien case." *In re Costas*, 555 F.3d 790, 796 (9ᵗʰ Cir. 2009).  *See Drye*, 528 U.S. at 52, 120 S.Ct. 474 ("This case concerns the respective provinces of state and federal law in determining what is property for purposes of federal tax lien legislation."); *Id.* ("the disclaimer did not defeat the federal tax liens") (internal quotations omitted); (explaining the issue as "whether [Drye's] interest in his mother's estate constituted 'property' or 'rights to property' under § 6321).  Certainly, there is a strong argument that if a "right to channel" has been recognized as a property right under one

---

[11] Section 6321 of the Internal Revenue Code provides, in pertinent part: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount … shall be a lien in favor of the United States upon all *property and rights to property*, whether real or personal, belonging to such person."  26 U.S.C. § 6321 (emphasis added).

federal statute, it should be considered property as a matter of federal law. *Costas*, 555 F.3d at 795. However, because this Court has already determined that the Debtor held an interest in "property" as defined by § 3302(12) of the FDCPA, it need not address the applicability of *Drye* in this case.

Because this is an issue of first impression in this Court, permitting the Trustee to proceed under the FDCPA may seem like a departure from established law. However, the fact that Trustees rarely invoke § 3304 does not make it improper. It is highly likely that the dearth of cases on the issue is because Trustees are unaware that this avoidance provision exists, not because they don't believe that it is applicable. *See e.g. In re Kipnis*, 555 B.R. 877, 883 (Bankr. S.D. Fla. 2016) (trustees' failure to use § 544(b) to employ longer statute of limitations in § 6502(a)(1) of the Internal Revenue Code may be because trustees "have not generally realized that this … weapon is in their arsenal."). Further, because § 3304 of the FDCPA is so similar to the Uniform Fraudulent Transfer Act, there is likely little reason for the Trustee to use it unless they are trying to take advantage of its longer "look back" period or, as in this case, attempting to reach an asset that would be beyond their grasp under state law.

## <u>CONCLUSION</u>

Section 544(b)(1) of the Bankruptcy Code permits the Trustee to recover interests of a debtor in property that are voidable under "applicable law" by an unsecured creditor. While there is a split of authority as to whether the FDCPA constitutes "applicable law" for purposes of § 544(b)(1), this Court agrees with the majority position and concludes that it is. Because of the derivative nature of § 544(b)(1), permitting the Trustee to utilize the FDCPA in this case neither "supersedes" nor "modifies" the operation of title 11 in violation of 28 U.S.C. § 3003(c) and, therefore, is available to the Trustee to avoid the Debtor's Disclaimer.

Further, because the "relation back" provision of the Illinois Probate Act is preempted by the FDCPA, the Trustee has established that the Debtor had an interest in "property" that was "transferred" pursuant to the federal statute.

Based on the foregoing, the Court concludes that the Trustee has pled sufficient facts to support a cause of action under §§ 3304(a)(1) and (b)(1)(A) of the FDCPA and, accordingly, the Defendants' Motions to Dismiss are DENIED.

Pursuant to Federal Rule of Bankruptcy Procedure 7012(a), the Defendants are granted fourteen (14) days from this date of this Order in which to file an answer to the Trustee's Complaint.

A SEPARATE ORDER SHALL ISSUE.

ENTERED: March 17, 2023

/s/ Laura K. Grandy
UNITED STATES BANKRUPTCY JUDGE